IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDMUND INGRAM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 19-cv-638-NJR |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| SIDDIQUI, | ) |
| ASSELMEIER, | ) |
| GAIL WALLS, | ) |
| JOHN BALDWIN, | ) |
| JACQUELINE LASHBROOK, | ) |
| FRANK LAWRENCE, | ) |
| LOUIS SHICKER, | ) |
| JOHN DOE #1, | ) |
| JANE DOE #1, and | ) |
| JOHN DOE #2, | ) |
| | ) |
|     Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Edmund Ingram, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff alleges Defendants were deliberately indifferent under the Eighth Amendment to his broken tooth. He also alleges Defendants' actions amounted to intentional infliction of emotional distress. Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous,

1

malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: On January 18, 2019, while Plaintiff was eating in the dining hall, he chipped his lower back tooth. (Doc. 1, p. 9). Plaintiff informed the gallery officer who stated that he contacted a nurse and Plaintiff was placed on the dental list. Plaintiff also put in a sick call request slip as he was in constant pain. (*Id*. at pp. 10, 25). Although IDOC rules require that an inmate be seen by a nurse within three days of an inmate submitting a sick call request, Plaintiff alleges that he was not seen in a timely fashion due to overcrowding at Menard and understaffing of the healthcare and dental units. During this time, Plaintiff continued to suffer from pain, he could not sleep or eat on the side where the broken tooth was located, and the tooth cut his tongue, causing it to bleed.

Plaintiff spoke with a nurse during the 7-3 shift on January 19, 2019, and the nurse informed him that he would be placed on the list to see dental staff. (Doc. 1, p. 10). Plaintiff put in another sick call request on January 19, 2019, but he was not seen for sick call. He spoke with John Doe #1, the 5-gallery officer on the 7-3 shift, on January 20, 2019. (*Id*.). He showed him his broken tooth and bloody mouth. John Doe #1 told Plaintiff that he contacted the healthcare unit, and Plaintiff was on the dental list. Plaintiff does not believe, however, that John Doe #1 actually contacted the healthcare unit because he returned to Plaintiff's cell too quickly. (*Id*. at p. 11).

Plaintiff also contacted John Doe #2 Lieutenant by letter and informed him of his broken tooth. He also spoke with John Doe #2 when he made rounds and showed him the tooth. John Doe #2 told him to "man up" and informed Plaintiff that there was only one dentist at Menard, and he could not see everyone at once. (*Id*. at p. 11). John Doe #2 refused to contact the healthcare unit for Plaintiff. (*Id*. at p. 12).

Plaintiff continued to send in sick call requests slips for dental care on January 21, 22, and 23, 2019, but he was not seen by a nurse on sick call. (Doc. 1, p. 12). He did speak to two nurses about his tooth; they informed him that he would be put on the dental list but that he would not be seen soon because there was only one dentist. The nurses told him that there was a thirty day wait for a tooth to be pulled, a sixty to ninety day wait for a filling, and a two-year wait for a dental cleaning. (*Id*. at p. 13).

Plaintiff submitted an emergency grievance seeking to be seen by a dentist on January 23, 2019, but Jacqueline Lashbrook deemed the grievance not an emergency. (Doc. 1, pp. 14, 38-39). He also sent letters to Jacqueline Lashbrook, Dr. Siddiqui, the dentist Asselmeier, John Baldwin, Medical Director Louis Shicker, Frank Lawrence, and Healthcare Unit Administrator Gail Walls asking for dental care for his broken tooth. (Doc 1, pp. 14, 16, 21-22, 24; 1-1, pp. 1, 3, 5, and 7). Plaintiff never received a response to any of his letters. (*Id*. at p. 15). On February 6, 2019, he spoke with a nurse on the 3-11 shift. When he informed her that he had been writing letters seeking care, she acknowledged that she was aware of the letters but that he would be seen when he was called by the healthcare unit. She told him to stop writing letters. (*Id*. at p. 15).

Plaintiff alleges that the delay in receiving care for his broken tooth is a result of Wexford Health Sources, Inc.'s policy of understaffing the dental and healthcare unit at Menard. (Doc. 1, p. 4). Plaintiff alleges that Menard has over 3,000 inmates. but Wexford only provides one dentist and understaffs the healthcare unit's medical staff. (*Id*.). As a result of this policy, Plaintiff experienced delays in seeing medical staff after he submitted sick call slips and ultimately experienced delays in being seen by dental staff for his broken tooth. Plaintiff alleges that Baldwin, Shicker, and Lashbrook were aware of systemic problems in the healthcare unit due to overcrowding and understaffing, but failed to remedy these issues.

**Discussion**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following five counts:

**Count 1:** **John Doe #1, John Doe #2, and Jane Doe Nurse #1 were deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth.**

**Count 2:** **Jacqueline Lashbrook, Dr. Siddiqui, Asselmeier, John Baldwin, Medical Director Louis Shicker, Frank Lawrence, and Healthcare Unit Administrator Gail Walls were deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth.**

**Count 3:** **Wexford Health Sources, Inc. was deliberately indifferent in maintaining a policy of understaffing the dental and healthcare unit at Menard which led to Plaintiff not receiving timely care in violation of the Eighth Amendment.**

**Count 4:** **The failure by Wexford, Louis Shicker, John Baldwin, Frank Lawrence, Jacqueline Lashbrook, Asselmeier, Siddiqui, and Gail Walls to provide Plaintiff with timely care amounted to intentional infliction of emotional distress.**

**Count 5:** **Louis Shicker, John Baldwin, and Jacqueline Lashbrook were deliberately indifferent to overcrowding at Menard, which caused delays in Plaintiff's treatment in violation of the Eighth Amendment.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

**Count 1**

Plaintiff states a viable claim for deliberate indifference against John Doe #2 Lieutenant who allegedly refused to contact the healthcare unit after Plaintiff showed the Lieutenant his broken tooth.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

*See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment).

On the other hand, however, Plaintiff fails to state a claim against John Doe #1 and Jane Doe #1 nurse. Plaintiff alleges that he informed John Doe #1 of his broken tooth and John Doe #1 contacted the healthcare unit and informed Plaintiff he was on the list to be seen by the dental unit. Although Plaintiff is suspicious of John Doe #1's claims, he fails to allege that his actions amounted to deliberate indifference. As to Jane Doe #1 nurse, Plaintiff identifies a number of nurses that he spoke to about his broken tooth, but he fails to allege that any of them acted with deliberate indifference. Several nurses informed Plaintiff that he was on the list to be seen by dental care (Doc. 1, p. 10 and 13), but there are no allegations to suggest that they delayed his care in any way. He also identifies a nurse he spoke with on February 16, 2019, who told him to stop writing letters, but there are no allegations suggesting that she acted with deliberate indifference in providing him care. She merely told him he would be seen when the healthcare unit called him. (*Id*. at p. 15). Accordingly, the Court **DISMISSES without prejudice** the claims against John Doe #1 and Jane Doe #1.

## Count 2

Plaintiff alleges that he wrote letters to Defendants asking them for care for his broken tooth and informing them that he was in pain. He alleges that Defendants ignored his requests for dental care, and he did not receive care of his broken tooth for over thirty days. These allegations state a viable claim for deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment).

## Count 3

A corporation can be held liable for deliberate indifference if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff alleges that Wexford had a policy of understaffing its dental

and healthcare unit at Menard, which caused Plaintiff's treatment for his broken tooth to be delayed. This is sufficient to state a claim against Wexford at this early stage, and Plaintiff's deliberate indifference claim against Wexford will be allowed to proceed.

**Count 4**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendants' conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.,* 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker,* 256 F.3d at 490.

Plaintiff alleges that Defendants both turned a blind eye to overcrowding and understaffing and ignored his letters asking for dental care. (Doc. 1, pp. 8-9, 17). Plaintiff also alleges that Defendants knew that this environment caused inmates, including Plaintiff, to wait for care for their serious medical needs and caused emotional distress. (*Id*. at p. 17). As such, the Court will allow Count 4 to proceed.

**Count 5**

The Eighth Amendment sets a "minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve 'the wanton and unnecessary infliction of pain.'" *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981)). Prison overcrowding is not a *per se* constitutional violation. *See Rhodes,* 452 U.S. at 348. "Accordingly, an inmate's constitutional challenge to prison conditions requires a two-part examination." *Townsend*, 522 F.3d at 773. First, a plaintiff must establish that the prison was overcrowded and that the overcrowding led to intolerable conditions, such as the deprivation of medical care, food, sanitation, or an increase in violence. *Id.; see also French v. Owens,* 777 F.2d 1250, 1253 (7th Cir. 1985). Additionally, a plaintiff must demonstrate that the defendants acted with deliberate indifference with respect to the conditions. *Townsend,* 522 F.3d at 773 (quoting *Farmer v. Brennan*, 511 U.S. 832, 834 (1994)).

Plaintiff alleges that there was overcrowding at Menard and understaffing of Menard's healthcare unit such that there were not enough healthcare staff for the number of inmates. As a result, Plaintiff was not seen in a timely fashion when he submitted sick call passes, and he was not seen by the dental staff for his broken tooth in a timely fashion. Plaintiff also alleges that Shicker, Baldwin, and Lashbrook were aware of these systemic problems through letters written by Plaintiff and through other lawsuits. Under similar circumstances, the Seventh Circuit has found that prison administrators were "well aware of multiple grievances from inmates regarding small cells" based on "numerous past lawsuits, including one specifically describing and ordering a remedial plan for overcrowding, small cells, and lack of adequate medical care...." *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (citing *Lightfoot v. Walker*, 486 F. Supp. 504, 511 (C.D. Ill. 1980)); *Munson v. Hulick*, 2010 WL 2698279 (S.D. Ill. July 7, 2010) (grievances filed by Plaintiff and other inmates were deemed sufficient at screening to put prison officials on notice of unconstitutional conditions where Menard prisoner challenged 40' cells that held two inmates for 21-22 hours per day)). Thus, Plaintiff states a claim for deliberate indifference against Baldwin, Lashbrook, and Shicker.

### John Doe Defendant

As the current warden of Menard, Frank Lawrence will be responsible for responding to discovery (informal or formal) aimed at identifying John Doe #2. *See Rodriguez v. Plymouth*

*Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the name of John Doe #2 is discovered, Plaintiff must file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### Motion for Counsel

In his Motion for Counsel (Doc. 3), Plaintiff indicates that he has sent letters to several attorneys, but he has not received any responses. Plaintiff claims that he will need help with this case because the claims are complex, he has limited education, and has relied on the help of a jailhouse lawyer to draft his Complaint. Given the early stage of the litigation, however, counsel is not needed because Defendants have not yet been served and a scheduling order setting forth the discovery process has not yet been entered. [2] Therefore, Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

### Disposition

For the reasons stated above, Count 1 shall proceed against John Doe #2 but is **DISMISSED without prejudice** as to John Doe #1 and Jane Doe #1. Count 2 shall proceed against Jacqueline Lashbrook, Dr. Siddiqui, Asselmeier, John Baldwin, Louis Shicker, Frank Lawrence, and Gail Walls. Count 3 shall proceed against Wexford Health Sources, Inc. Count 4 shall proceed against Wexford, Louis Shicker, John Baldwin, Frank Lawrence, Jacqueline Lashbrook, Asselmeier, Siddiqui, and Gail Walls. Count 5 shall proceed against Louis Shicker, John Baldwin, and Jacqueline Lashbrook. The Clerk is **DIRECTED** to **TERMINATE** John Doe #1 and Jane Doe #1 from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

The Clerk of Court shall prepare for Defendants Jacqueline Lashbrook, Dr. Siddiqui, Asselmeier, John Baldwin, Louis Shicker, Frank Lawrence, Gail Walls, and Wexford Health Sources,

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. The Court will provide Frank Lawrence with further instructions on identifying John Doe #2 at a later date.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission

of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  8/19/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**