IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EDMUND INGRAM,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**WEXFORD HEALTH SOURCES, INC.,** *et al.,*<br><br>   **Defendants.** | Case No. 19-cv-638-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on motions for summary judgment filed by Dr. Mohammed Siddiqui (Docs. 44, 45), Craig Asselmeier (Docs. 47, 48), and Wexford Health Sources, Inc. ("Wexford") (Docs. 50, 51). Defendants argue that Plaintiff Edmund Ingram failed to exhaust his administrative remedies prior to filing suit. Ingram has filed a joint response (Doc. 60) in opposition.

On July 16, 2020, the Court held an evidentiary hearing on the motions. After the hearing, the parties filed supplemental briefs (Docs. 86, 87, 88). To the extent Ingram's supplement (Doc. 86) again requests counsel, that request is denied. The matter has now been fully briefed, and the Court finds counsel is not necessary at this time.

BACKGROUND

On June 12, 2019, Ingram, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Stateville Correctional Center ("Stateville"), filed

his Complaint pursuant to 42 U.S.C. § 1983 alleging deliberate indifference in the treatment of his broken tooth while he was housed at Menard Correctional Center ("Menard") (Doc. 1). Ingram was allowed to proceed on the following claims:

> Count 1: Nicholas Bebout was deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth.
>
> Count 2: Jacqueline Lashbrook, Dr. Siddiqui, Dr. Asselmeier, John Baldwin, Medical Director Louis Shicker, Frank Lawrence, and Healthcare Unit Administrator Gail Walls were deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth.
>
> Count 3: Wexford Health Sources, Inc. was deliberately indifferent in maintaining a policy of understaffing the dental and healthcare unit at Menard which led to Plaintiff not receiving timely care in violation of the Eighth Amendment.
>
> Count 4: Wexford, Louis Shicker, John Baldwin, Frank Lawrence, Jacqueline Lashbrook, Dr. Asselmeier, Dr. Siddiqui, and Gail Walls' failure to provide Plaintiff with timely care amounted to intentional infliction of emotional distress.
>
> Count 5: Louis Shicker, John Baldwin, and Jacqueline Lashbrook were deliberately indifferent to overcrowding at Menard which caused delays in Plaintiff's treatment in violation of the Eighth Amendment.

Ingram alleges that he filed two grievances relevant to the claims in his Complaint. On January 23, 2019, Ingram submitted an emergency grievance about his dental care (Doc. 45-2, pp. 1-2). The grievance alleges that he broke his back tooth on January 18, 2019, and submitted a dental call slip and made several requests to see the dentist but had not been able to obtain an appointment with the dentist at the time he filed the grievance. The grievance was deemed not an emergency by the Chief Administrative

Officer ("CAO") and returned to Ingram with an instruction to "submit the grievance in the normal manner" (Doc. 45-2, p. 1). On February 19, 2019, the grievance was received by the Administrative Review Board ("ARB") and was returned to Ingram on February 21, 2019, because he failed to provide a counselor or grievance officer response (Doc. 45-3). The parties do not dispute that Ingram did not pursue the grievance through the normal grievance process. Ingram argues that he was not required to pursue the grievance further after receiving a response from the ARB.

In addition to the January 23 grievance, Ingram argues that he submitted another emergency grievance on April 10, 2019 (Doc. 60, pp. 22-23). This grievance complains about dental treatment provided by Wexford and Dr. Asselmeier, noting that he finally received treatment from Dr. Asselmeier on January 30, 2019, and he was scheduled for a tooth extraction three weeks later, despite his continued complaints of pain (*Id*. at p. 23). The grievance notes that on February 20, 2019, Dr. Asselmeier was unsuccessful in extracting the tooth, and Ingram still had pain (*Id*.). The grievance also mentions Dr. Siddiqui. Ingram argues that he submitted the grievance to the CAO but never received a response.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part,

that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative

remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Ingram was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief

Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO

determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

There are two grievances relevant to Ingram's claims: a grievance dated January 23, 2019, and a grievance dated April 10, 2019. The Court finds that neither grievance was properly exhausted.

### A. January 23, 2019 Grievance

Ingram first argues that he did not need to exhaust his administrative remedies because the grievance process is unconstitutional and futile, but futility does not excuse exhaustion. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement."). He also argues that he did not need to further exhaust his January emergency grievance after he submitted it to the warden and it was deemed not an emergency. *See Thornton*, 428 F.3d at 694. The administrative procedures were changed, however, in 2017 and require an inmate to re-submit a grievance deemed not an emergency through the normal process. *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 832 (7th Cir. 2020) ("[H]ad

[plaintiff's] grievances been filed after the [2017] amendment took effect, it would be clear that he was required to resubmit his grievances under the normal procedure and complete the full three-stage process in order fully to exhaust available remedies"). Ingram filed his grievance in January 2019—well after the administrative procedures were changed—requiring him to submit his grievance through the normal process after being deemed not an emergency.

Ingram argued at both the hearing and in his supplement that he was not aware that the grievance process had changed after *Thorton* (Docs. 86, pp. 5-6; 88, pp. 2 and 4). He asserts that the grievance form was not updated at the time he submitted his grievance and the warden checked the box that the "[o]ffender should submit this grievance in the normal manner" where the grievance form now states "offender should submit his grievance according to standard grievance procedure." (Doc. 86, p. 7). But Ingram was informed on *two occasions* that his grievance was not an emergency and he needed to process his grievance through the normal process. The warden specifically found his grievance to not be an emergency, and he was directed to submit the grievance "in the normal manner"—which is through the normal grievance process (Doc. 45-2, p. 1). Although IDOC may have recently changed the language on the form, the Court does not find the language on Ingram's grievance confusing or misleading. Ingram was directed to submit his grievance through the normal manner, by submitting the grievance with his counselor.

Further, any confusion Ingram may have had about how to proceed with his grievance was clarified in the response from the ARB. The ARB's response specifically

notes that Ingram needed to provide a counselor's response as well as a response from the grievance officer and CAO (Doc. 45-3). The ARB also checked the box informing Ingram that his medical claims had to first be reviewed at his current facility before submitting his grievance to the ARB (*Id.*). Thus, Ingram was provided with ample instructions on how to properly submit his grievance, but he failed to so. Because he failed to pursue the grievance through the normal grievance process as directed, he failed to exhaust his January 23, 2019 grievance.

### B. April 10, 2019 Grievance

As to April 10 grievance, Ingram testified that he submitted the grievance through the bars of his cell, addressed to the warden, but never received a response. He testified at the hearing that a copy of the grievance was later confiscated during a shakedown of his cell because it was "extra legal" material. He did not realize it was in his excess legal storage box until an inmate helping him with the case was preparing his response to the summary judgment motion. Ingram attached an affidavit from that inmate, Ronald Barrow, who testified that he located a copy of the April 10 grievance while going through Ingram's legal files (Doc. 84, p. 9). If Ingram did submit this grievance and never received a response, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting

his resources).

Although Ingram testified that he submitted the grievance through the cell bars and never saw it again, the Court does not find his testimony to be credible. There is no evidence of the grievance anywhere in the records. As Defendants point out, Ingram's counseling summary includes a number of entries where grievances were received, including his January 23, 2019 grievance (Doc. 45-1, p. 2). The counseling summary shows a history of grievances being received from Ingram by the prison (Doc. 45-1). There is no evidence on the counseling summary that the April 10 grievance was ever received. It seems implausible that this one grievance would go missing when the prison had a history of receiving and responding to Ingram's grievances. There is simply no evidence in the record to suggest that Ingram submitted the grievance as he testified.

The counseling summary also indicates that Ingram met with his counselor on May 17, 2019, after he allegedly submitted the grievance. Although he requested a trust fund statement, he had "no other issues" (*Id*. at p. 1). There is no indication that he inquired about the status of the April 10 grievance. He testified at the evidentiary hearing that he inquired of other inmates about the status of his grievance, and they told him it usually took thirty days to get a response. Yet when he met with his counselor on May 17, 2019, over thirty days after he testified he submitted his April 10 grievance, he did not inquire about its status. The Court finds that he did not inquire about the status of the grievance because he had not submitted a grievance.

Not only is there no evidence of the grievance in IDOC's records nor did Ingram inquire about the grievance, but he also did not identify the grievance in his Complaint

(Doc. 1). He attached his January 23, 2019 grievance but made no mention of any additional grievances. Although Ingram testified that he did not rely on the April 10 grievance in writing his Complaint because he did not believe he had access to the grievance and thought it was lost, he did not even mention a possible second grievance anywhere in his Complaint. He tries to justify not mentioning the grievance based on advice of the inmate helping him file his Complaint, but the Court does not find this to be credible either (*see also* Doc. 84, p 10). If he had submitted another grievance, the Court finds that he would have at least described the grievance in his Complaint. The fact that he did not indicates that he did not submit the April 10 grievance or that it did not exist prior to filing his Complaint.

    Ingram tried to explain the missing grievance and its later discovery, but his story about how a copy of his grievance went missing and was later discovered also defies belief. Ingram testified that during a routine shakedown at Menard, the date and time of which he could not recall, the April 10 grievance and other documents were taken from his cell and placed in his excess storage box. The only item related to this case that was confiscated was the April 10 grievance. He testified that he did not know the grievance was confiscated or placed in his excess storage box. The grievance was not discovered until Ronald Barrow went through his documents in helping him prepare a response to the summary judgment motions. Ingram could not remember anything about the shakedown or even that the grievance was taken. He testified that he did not know it was missing until he filed his Complaint and, even then, he did not realize it was in his excess legal storage. But Barrow miraculously discovered it when it was needed to respond to

the summary judgment motions. The story is implausible and appears made up to justify the existence of the April 10, 2019 grievance.

Because there is no evidence of the existence of the grievance anywhere in the records and Ingram's story regarding the grievance defies credibility, the Court finds that the April 10 grievance was not submitted. Thus, Ingram failed to exhaust his administrative remedies as to his claims against Dr. Mohammed Siddiqui, Craig Asselmeier, and Wexford.

## CONCLUSION

For the reasons stated above, the summary judgment motions (Docs. 44, 45; 47, 48; 50; 51) are **GRANTED**. The claims against Dr. Siddiqui, Craig Asselmeier, and Wexford are **DISMISSED without prejudice** for Ingram's failure to exhaust his administrative remedies. Judgment will be entered accordingly at the conclusion of the entire action.

**IT IS SO ORDERED.**

DATED:  July 30, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**