IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDMUND INGRAM,<br><br>      Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>*et al.*,<br><br>      Defendant. | Case No. 19-cv-638-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Plaintiff Edmund Ingram's Motion to Revise or Amend Judgment (Doc. 93). Also pending are Defendants Dr. Mohammed Siddiqui, Dr. Craig Asselmeier, and Wexford Health Sources, Inc.'s ("the Wexford Defendants") Motion to Dismiss and Motion for Summary Judgment as to Counts IV and VI (Doc. 92). For the reasons set forth below, Ingram's Motion to Revise or Amend Judgment is denied, and the Wexford Defendants' Motion to Dismiss and Motion for Summary Judgment as to Counts IV and VI are granted in part and denied in part.

### BACKGROUND

Ingram, an inmate of the Illinois Department of Corrections ("IDOC") previously housed at Menard Correctional Center ("Menard"), initiated this action pursuant to 42 U.S.C. § 1983 alleging that the Wexford Defendants and others were deliberately indifferent to his medical conditions in violation of the Eighth Amendment (Docs. 1, 66).

After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, Ingram was permitted to proceed on the following claims:

> Count I: Nicholas Bebout was deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth.
>
> Count II: Jacqueline Lashbrook, Dr. Siddiqui, Dr. Asselmeier, John Baldwin, Medical Director Louis Shicker, Frank Lawrence, and Healthcare Unit Administrator Gail Walls were deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth.
>
> Count III: Wexford Health Sources, Inc. was deliberately indifferent in maintaining a policy of understaffing the dental and healthcare unit at Menard which led to Plaintiff not receiving timely care in violation of the Eighth Amendment.
>
> Count IV: Wexford, Louis Shicker, John Baldwin, Frank Lawrence, Jacqueline Lashbrook, Dr. Asselmeier, Dr. Siddiqui, and Gail Walls' failure to provide Plaintiff with timely care amounted to intentional infliction of emotional distress.
>
> Count V: Louis Shicker, John Baldwin, Frank Lawrence, and Jacqueline Lashbrook were deliberately indifferent to overcrowding at Menard which caused delays in Plaintiff's treatment in violation of the Eighth Amendment.
>
> Count VI: Illinois Medical Negligence claim against Jacqueline Lashbrook, Dr. Siddiqui, Dr. Asselmeier, John Baldwin, Louis Shicker, Frank Lawrence, Gail Walls, Nicholas Bebout, and Wexford for delaying dental care for Plaintiff's broken tooth.

(Docs. 6, 65).

The Wexford Defendants timely filed a Motion for Summary Judgment Limited to the Issue of Exhaustion of Administrative Remedies arguing Ingram failed to exhaust his administrative remedies prior to filing this lawsuit when he did not file the January 23, 2019 grievance through the normal grievance process under the Illinois Administrative

Code (Docs. 44, 47, 50). *See* 20 ILL. ADMIN. CODE § 504.800 *et seq*. The Wexford Defendants asserted that Ingram's January 23, 2019 grievance was deemed not an emergency by the Chief Administrative Officer ("CAO") and was returned to Ingram with an instruction to "submit the grievance in the normal manner" (Doc. 45-2, p. 1). Ingram then sent this grievance to the Administrative Review Board ("ARB"), but it was returned on February 21, 2019, because he failed to provide a counselor or grievance officer response (Doc. 45-3).

In response, Ingram argued that he was not required to pursue the January 23, 2019 grievance further after receiving a response from the ARB (Doc. 60). Ingram also argued that he submitted another emergency grievance on April 10, 2019 (Doc. 60, pp. 22-23). The Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on July 16, 2020. In its subsequent order granting summary judgment to Defendants, the Court acknowledged that the administrative procedures were changed, and, as a result, Ingram was required to resubmit the January 23, 2019 grievance deemed through the normal process. *See* Doc. 91, pp. 7-8 (citing *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 832 (7th Cir. 2020)). Ingram argued he was unaware that the grievance process had changed, but the Court explained that "Ingram was informed on *two occasions* that his [January 23, 2019] grievance was not an emergency and he needed to process his grievance through the normal process" (*Id*. at p. 8). The Court further noted that Ingram's argument was unpersuasive as the response from the ARB clarified that Ingram's "medical claims had to first be reviewed at his current facility before submitting his grievance to the ARB" (*Id*. at p. 9).

As to the missing April 10, 2019 grievance, the Court did not find Ingram's testimony to be credible (*Id*. at pp. 9-12). Not only was there no evidence of the grievance, but Ingram's counseling summary shows a history of grievances being received from Ingram by the prison (Doc. 45-1). The Court found it "implausible that this one grievance would go missing when the prison had a history of receiving and responding to Ingram's grievances" (Doc. 91, p. 10). The Court continued noting that Ingram met with his counselor on May 17, 2019, more than 30 days after the alleged April 10, 2019 grievance, but there was no indication that he inquired about the status of the April 10 grievance. Besides the history of grievances and the counselor meeting, Ingram attached the January 23, 2019 grievance to his original Complaint, but made no mention of any additional grievances (*Id*. at p. 11).

Accordingly, on July 30, 2020, the Court granted the Wexford Defendants' Motion for Summary Judgment Limited to the Issue of Exhaustion of Administrative Remedies (Doc. 91), and held that "[t]he claims against [the Wexford Defendants] are **DISMISSED without prejudice** for Ingram's failure to exhaust his administrative remedies" (Doc. 91, p. 12). The Wexford Defendants note, however, that "the Court's Order at Doc. 91 did not dispose of the state law claims against the undersigned Defendants" (Doc. 94, p. 2). As a result, on August 6, 2020, the Wexford Defendants filed a Motion to Dismiss for Lack of Jurisdiction and Motion for Summary Judgment as to Counts IV and VI (Doc. 92). On August 10, 2020, Ingram filed a "Motion to Revise and/or Alter or Amend a Judgment – Re (Doc. 91) Order" and cited Rules 54(b) and 59(e) of the Federal Rules of Civil Procedure (Doc. 93).

DISCUSSION

I. **Ingram's Motion to Revise or Amend Judgment**

The Court begins its analysis with Ingram's Motion to Revise or Amend Judgment (Doc. 93). Notably, the Court's summary judgment order was an interlocutory order, and Rule 59(e) applies only to final judgments. Still, the Court retains power to reconsider and modify an interlocutory order at any time prior to the entry of a final judgment. *See* FED. R. CIV. P. 54(b). Reconsideration of an interlocutory order is proper where the Court has misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id*. at 1192 (citation omitted).

In his motion, Ingram takes the "kitchen-sink approach"—contesting nearly every finding the Court has made. Ultimately, Ingram is simply "rehashing previously rejected arguments." *See Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

A. *Ingram's Motion for Counsel*

Ingram claims the Court erred in failing to grant his motions for counsel (Doc. 93, p. 2). But there is no constitutional right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Under 28 U.S.C. § 1915(e), district courts have discretion to request counsel to assist *pro se* litigants. When presented with a request to

appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself . . . ." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

The Court previously found that Ingram met his threshold burden of trying to obtain counsel on his own (Docs. 6, 74). But the Court found that Ingram appeared to be competent to represent himself in the evidentiary hearing because Ingram's response demonstrated that he understood the issues raised by the motion (Doc. 74, p. 2). Further, this request was denied on June 25, 2020. To the extent Ingram is again requesting counsel, that request is denied.

### B. *Overlooking the Vast Majority of Facts and Authorities*

Next, Ingram argues that the Court "overlooks the vast majority of facts and authorities set forth in Plaintiff's pleadings" (Doc. 93, p. 2). Ingram goes on to dispute the Court's finding to deny Mr. Barrow as a witness at the *Pavey* hearing, and points to the Court's orders on July 10, 2020 and July 30, 2020 regarding Mr. Barrow (*Id*. at p. 4). On July 10, 2020, the Court found that Ingram "fails to show how Barrow's testimony will be relevant to the issue of whether Plaintiff filed his April emergency grievance, other than to say in conclusory fashion that he has knowledge of the grievance [and] [Ingram] does not allege that Barrow was present when he submitted the grievance" (Doc. 83). On July 30, 2020, the Court acknowledged that "Ronald Barrow [ ] testified that he located a copy of the April 10 grievance while going through Ingram's legal files[,]" (Doc. 91. p. 9), and "Barrow miraculously discovered it when it was needed to respond to the summary

judgment motion" (*Id*. at pp. 11-12). These orders are not contradictory. Ingram has not pointed to facts the Court patently misunderstood, or decisions the Court made outside the adversarial issues presented, or errors of apprehension. Accordingly, these arguments are denied.

### C. *Grievance Process is Unconstitutional Because of Remedies are Unavailable*

Ingram also protests that the Court misconstrued his argument because he was not arguing that the grievance process was unconstitutional (Doc. 93. pp. 3-4). In Ingram's response to the Wexford Defendants' Motion for Summary Judgment as to the exhaustion of administrative remedies, however, he complains of "prison officials in failing to follow its own policy and to interfere with the primary purpose to alert prison officials to a problem and give time and opportunity to resolve before proceeding to court, renders the procedure unconstitutional as applied and deprive inmates . . . from being heard" (Doc. 60, p. 9). Ingram continues noting that he will "submit testimony at *Pavey* hearing in support [of] IDOC and specifically Menard correctional Center has been on notice since 2007 as to the inadequate and unconstitutional grievance procedure in violation of the First and Fourteenth Amendments . . . ." (*Id*. at pp. 9-10). The Court did not misconstrue Ingram's argument regarding the grievance process.

Rather, Ingram asserts that his argument is that the grievance process is unconstitutional because of the unavailability of remedies. Ingram asserts that exhaustion of remedies is unavailable "if prison officials do not respond to a properly filed grievance or other wise use affirmative misconduct to prevent a prisoner from exhausting" (*Id*. at p. 11). Then in Ingram's "Brief Relating to the *Pavey* Hearing and

Omnibus Objections," he "objects to any ruling which does not address the previously submitted argument that the IDOC/Menard grievance procedure/remedies are unavailable due to the unconstitutionality as applied to Plaintiff incorporated herein by reference" (Doc. 86, p. 5).

The Court did not ignore Ingram's argument related to the unavailability of remedies (Doc. 91, p. 9). The Court already found the grievance process was made available to Ingram and pointed to evidence that "Ingram was informed on *two occasions* that his [January 23, 2019] grievance was not an emergency and he needed to process his grievance through the normal process" (*Id*. at p. 8). The Court further noted the ARB clarified that Ingram's "medical claims had to first be reviewed at his current facility before submitting his grievance to the ARB" (*Id*. at p. 9). Thus, this argument fails.

### D. *Wexford Defendants had the Burden of Showing Ingram's Failure to Exhaust*

Ingram then argues the Wexford Defendants shifted the burden and "this Court has followed suit, clearly in error as a matter of law" (Doc. 93, p. 4). The Court did not shift the burden. The Wexford Defendants had the burden of showing that Ingram failed to exhaust. The evidence before the Court showed that the January 23, 2019 grievance was not exhausted. The Court held a *Pavey* hearing regarding the April 10, 2019 grievance, and found that Ingram's testimony was not credible. Accordingly, this argument is denied.

### E. *The January 23, 2019 and April 10, 2019 Grievances*

Ingram continues arguing that "the January 23, 2019 grievance was exhausted based on the law at the time of filing and the prison officials failure to give notice to

Plaintiff and all IDOC inmates of the 2017 change of the Illinois Administrative Code [and] creating an ex post facto situation in violation of due process of law" (*Id*. at p. 6). Ingram notes that the form used in January 2019 by IDOC included "offender should submit this grievance in the *normal manner*," but now IDOC uses a form explaining that the "offender should submit this grievance according to *standard grievance procedures*." (*Id*. at pp. 6-7). The Court already denied this argument in its July 30, 2020 order noting that "[a]lthough IDOC may have recently changed the language on the form, the Court does not find the language on Ingram's grievance confusing or misleading" (Doc. 91, p. 8). Ingram does point to facts the Court misunderstood, decisions the Court made outside the issues presented, or errors of apprehension, thus this argument fails.

Then Ingram argues that the April 10, 2019 grievance should be deemed unavailable because the prison officials lost or destroyed the grievance. Not only is there no evidence of the grievance, but also the Court held a *Pavey* hearing and found it "implausible that this one grievance would go missing when the prison had a history of receiving and responding to Ingram's grievances" (*Id*. at p. 10). Besides the history of grievances and the counselor meeting on May 17, 2019, Ingram attached the January 23, 2019 grievance to his original complaint, but made no mention of any additional grievances.

Ingram also alleges the Court misapprehended the facts of record and ruled "contrary to the law, i.e. '[a]ll facts and reasonable inferences must be construed in favor of plaintiff and the court was not to weight the evidence or assess the facts, but simply to determine whether there is a genuine issue for trial'" (Doc. 93, p. 6).

Ingram is incorrect. In *Pavey* hearings, the Court can make findings of fact and credibility assessments of witnesses. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011); *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility") (citations omitted). Besides the *Pavey* hearing, the Court cannot simply assume the truth of Ingram's statements, for "[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1057 (7th Cir. 1994); *see also First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) ("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact.").

### F. Frivolous Allegation of a "Slanderous Claim"

Ingram's only new argument is a frivolous allegation that the Court made a "slanderous claim" accusing Mr. Barrow of perjury (Doc. 93, p. 12). The Court did not mention perjury in the July 30, 2020 order (Doc. 91). Instead, the Court noted that "[t]he story is implausible and appears made up to justify the existence of the April 10, 2019 grievance" (*Id.* at p. 12).

The Court has "inherent powers to protect [itself] from vexatious litigation." *Alexander v. United States*, 121 F.3d 312, 315 (7th Cir. 1997) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). One inherent power is to dismiss when a litigant has "willfully abused the judicial process." *See Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) ("Though 'particularly severe,' the sanction of dismissal is within the court's discretion"); *see also Chambers*, 501 U.S. at 43 (courts have the inherent power to

impose *respect and decorum*, and "to fashion an appropriate sanction for conduct which abuses the judicial process."). Ingram is **WARNED** that he may be subject to sanctions for further frivolous allegations or actions of disrespect.

## II.     Certification of Final Judgment under Rule 54(b)

The Court next addresses Ingram's motion for certification of a final judgment under Federal Rule of Civil Procedure 54(b). Rule 54(b) permits a district court to direct entry of a final judgment as to one claim or party if it determines that there is no just reason for delay. FED. R. CIV. P. 54(b). A Rule 54(b) certification entails a two-step analysis. First, the Court must determine whether the judgment is final in the sense that it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980). Second, the Court must determine whether there is any just reason for delay, taking into account the interests of judicial administration and the equities involved. *Id.* at 8.

The decision to certify a final judgment as to fewer than all claims in a case is left to the sound discretion of the district court. *Id.* Nevertheless, district courts are not to use Rule 54(b) unless there is a good reason for doing so. *United States v. Ettrick Wood Prods., Inc.*, 916 F.2d 1211, 1218 (7th Cir. 1990). Where claims are substantively intertwined—for example, where the pending claims factually overlap with those for which a Rule 54(b) judgment is sought—a Rule 54(b) judgment is inappropriate. *See General Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 380 (7th Cir. 2011).

Overall, the Court cannot say there is no just reason to delay the appeal. The claims Ingram seeks to appeal are premised on the same facts as the claims remaining in this

case. Ingram's claims against Lashbrook, Baldwin, Shicker, Lawrence and Walls relate to the alleged delay in dental care which stem from the same set of facts on which Ingram based his now-dismissed claims. In fact, most of the claims are a "mere variation" of the same legal theory—that Defendants were deliberately indifferent to Ingram's medical needs. If the dismissed claims were to proceed on appeal now, and Ingram later appeals the outcome of his remaining claims, the appellate court would be required to duplicate its efforts by reviewing the voluminous record twice in deciding each appeal. Thus, the Court is not convinced that there is no just reason for delay in this case, and Ingram's Motion for Certification pursuant to Rule 54(b) is denied.

### III.     Wexford Defendants' Motion to Dismiss for Lack of Jurisdiction

The Wexford Defendants argue that because the Court dismissed the Section 1983 claims against them, "there is no federal foundation on which the Court should build its supplemental jurisdiction" (Doc. 92, p. 3). The Wexford Defendants further assert that "this Court should dismiss Plaintiff's Counts [IV] and [VI], because it lacks supplemental subject matter jurisdiction over Counts [IV] and [VI]" (*Id.*).

"When 'the federal claim in a case drops out before trial,' a district court usually 'relinquish[es] jurisdiction over any supplemental claim to the state courts.'" *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (quoting *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008)) (citations omitted). There are, however, "three well-recognized exceptions to this general rule." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The three exceptions, include: "when the refiling of the state claims is barred by the statute of limitations; where substantial judicial resources

have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007)) (citing *Wright*, 29 F.3d at 1251-1252).

Here, the intentional infliction of emotional distress (Count IV) and medical negligence (Count VI) claims arose from Illinois law, and the Court obtained supplemental jurisdiction over the claims because they "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). If the Wexford Defendants had sought dismissal of the state law claims at the time they moved for summary judgment on the issue of exhaustion of administrative remedies, the Court likely would have relinquished jurisdiction at that time. But now the intentional infliction of emotional distress claim falls under the first exception to the general rule of relinquishing jurisdiction—the claim is likely barred by the state statute of limitations. And the medical negligence claim, as shown below, falls under the third exception to the general rule of relinquishing jurisdiction over any supplemental claim. Accordingly, the Wexford Defendants' 12(b)(1) Motion to Dismiss is denied.

**IV.  Wexford Defendants' Motion for Summary Judgment as to Count VI**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. At the summary judgment phase of the litigation, the facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). The Court shall "neither

come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). To survive summary judgment a non-moving party must "show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009). Summary judgment shall be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Wexford Defendants move for summary judgment as to Count VI because Ingram failed to produce the documentation required by 735 ILCS § 5/2-622. Previously, the Court explained "[t]o ultimately pursue this claim, before the completion of the summary judgment phase of the case, Ingram must file an affidavit stating that 'there is a reasonable and meritorious cause' for litigation against the defendants and a physician's report to support the assertions in the affidavit, pursuant to 735 ILCS § 5/2-622." *Ingram v. Wexford Health Sources, Inc.*, 2020 WL 2735555, at *2 (S.D. Ill. May 26, 2020) (citing *Young v. United States*, 942 F.3d 349 (7th Cir. 2019)).

In *Young*, 942 F.3d at 350-51, the Seventh Circuit acknowledged that dismissal to provide the documentation described in 735 ILCS § 5/2-622 should occur on summary judgment. *See id.* (noting that "a prisoner may have insuperable difficulty obtaining a favorable physician's report before filing a complaint, so if a complaint not accompanied by a § 5/2-622 affidavit is defective, many a prisoner will be unable to litigate a malpractice claim. But if a prisoner or other *pro se* plaintiff has until the summary judgment stage to comply with the state law, information obtained in discovery may

allow a physician to evaluate the medical records and decide whether there is reasonable cause for liability"). The decision in *Young* confirmed that plaintiffs do not need to attach the healthcare report and affidavit to their complaint. *Id*. at 351 ("conclude[ing] that a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622").

Ingram cites the decision in *Young* and argues that "this case has not reached summary judgment on the merits [thus] Defendants requirement is clearly frivolous and must be rejected" (Doc. 109, p. 5). This is incorrect. The Court in *Young* found that "[a] defendant may submit a motion with its answer and ask the court to grant summary judgment because the plaintiff has not supplied the required affidavit and report." *Id*. The Court continued noting that "just as § 5/2-622(a)(3) allows extra time if necessary to provide the reviewing physician with vital information, so Rule 56(d) allows a district court to grant extra time to the nonmovant to gather essential evidence." *Id*. at 351-52. In fact, the Court recognized "[b]y requesting summary judgment as an alternative to its motion to dismiss the complaint, the United States put [plaintiff] on notice of the need for an affidavit and report" *Id*. at 352.

Indeed, in *Young*, the Seventh Circuit affirmed the district court's dismissal of plaintiff's complaint because "[i]n the ensuing six months [plaintiff] did not try to comply [with] [§ 5/2-622]." *Id*. at 352. Like *Young*, Ingram has not tried to comply with 735 ILCS § 5/2-622 for six months. The Wexford Defendants filed their motion on August 6, 2020, and after six months Ingram still has not tried to comply with 735 ILCS § 5/2-622.

Accordingly, the Wexford Defendant's Motion for Summary Judgement as to Count VI is granted.

## CONCLUSION

For the reasons stated above, Ingram's Motion to Revise or Amend Judgment (Doc. 93) is **DENIED**. The Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) filed by the Wexford Defendants is **DENIED**. The Motion for Summary Judgment as to Count VI is **GRANTED**, and Count VI is **DISMISSED with prejudice** (Doc. 92). The action will proceed on Ingram's claim of the intentional infliction of emotional distress (Count IV) and Ingram's claims of deliberate indifference against Nicholas Bebout, Louis Shicker, John Baldwin, Frank Lawrence, and Jacqueline Lashbrook (Counts I, II, and V).

**IT IS SO ORDERED.**

DATED: February 17, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**