IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDMUND INGRAM,

      Plaintiff,

v.                                                    Case No. 19-cv-638-NJR

WEXFORD HEALTH SOURCES, INC.,
*et al.*,

      Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment on the issue of Exhaustion of Administrative Remedies (Doc. 103) filed by Defendants John Baldwin, Nicholas Bebout, Frank Lawrence, Jacqueline Lashbrook, Louis Shicker, and Gail Walls (the "IDOC Defendants") For the reasons set forth below, the IDOC Defendants' Motion for Summary Judgment is granted.

### BACKGROUND

Ingram, an inmate of the Illinois Department of Corrections ("IDOC") previously housed at Menard Correctional Center ("Menard"), initiated this action pursuant to 42 U.S.C. § 1983 alleging that the IDOC Defendants and others were deliberately indifferent to his medical conditions in violation of the Eighth Amendment (Docs. 1, 66). After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, Ingram was permitted to proceed on the following claims:

| | |
|---|---|
| Count I: | Nicholas Bebout was deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth. |
| Count II: | Jacqueline Lashbrook, Dr. Siddiqui, Dr. Asselmeier, John Baldwin, Medical Director Louis Shicker, Frank Lawrence, and Healthcare Unit Administrator Gail Walls were deliberately indifferent under the Eighth Amendment by delaying dental care for Plaintiff's broken tooth. |
| Count III: | Wexford Health Sources, Inc. was deliberately indifferent in maintaining a policy of understaffing the dental and healthcare unit at Menard which led to Plaintiff not receiving timely care in violation of the Eighth Amendment. |
| Count IV: | Wexford, Louis Shicker, John Baldwin, Frank Lawrence, Jacqueline Lashbrook, Dr. Asselmeier, Dr. Siddiqui, and Gail Walls' failure to provide Plaintiff with timely care amounted to intentional infliction of emotional distress. |
| Count V: | Louis Shicker, John Baldwin, Frank Lawrence, and Jacqueline Lashbrook were deliberately indifferent to overcrowding at Menard which caused delays in Plaintiff's treatment in violation of the Eighth Amendment. |
| Count VI: | Illinois Medical Negligence claim against Jacqueline Lashbrook, Dr. Siddiqui, Dr. Asselmeier, John Baldwin, Louis Shicker, Frank Lawrence, Gail Walls, Nicholas Bebout, and Wexford for delaying dental care for Plaintiff's broken tooth. |

(Docs. 6, 65).

Similar to Defendants Dr. Mohammed Siddiqui, Dr. Craig Asselmeier, and Wexford Health Sources, Inc.'s ("Wexford Defendants") Motion for Summary Judgment Limited to the Issue of Exhaustion of Administrative Remedies, the IDOC Defendants' Motion for Summary Judgment now before the Court argues that Ingram failed to exhaust his administrative remedies prior to filing this lawsuit when he did not file the

Page 2 of 12

January 23, 2019 grievance through the normal grievance process under the Illinois Administrative Code (Doc. 104). *See* 20 ILL. ADMIN. CODE § 504.800 *et seq.*

Ingram filed Motions to Strike in response (Docs. 107, 111), arguing that the IDOC Defendants' motion was not timely filed. On September 23, 2020, the Court denied Ingram's first motion to strike finding "that the IDOC Defendants' motion for summary judgment [Doc.] 103 is timely filed" (Doc. 108). Specifically, the Court noted that "[a]t the July 16, 2020 hearing, the Court GRANTED Defendants thirty days after the filing of Bebout's Answer to file a motion on the issue of exhaustion" (*Id.*). The Court continued, explaining that "Bebout's Answer was filed August 24, 2020, thus making their recently filed motion for summary judgment timely" (*Id.*). The Court then granted Ingram additional time to respond to the summary judgment motion, and his response was due December 28, 2020 (*Id.*).

On December 29, 2020, the Court denied Ingram's second Motion to Strike acknowledging that "Defendants were granted an extension of time to file their answer (see Doc. 90) making their motion for summary judgment on the issue of exhaustion timely" (Doc. 114). The Court noted that "[t]o the extent Plaintiff argues that Defendants did not properly raise exhaustion as an affirmative defense in their answer (Doc. 98), Plaintiff may raise that argument in his response to the summary judgment motion" (*Id.*). On that same day, the Court received Ingram's response to the IDOC Defendants' Motion for Summary Judgment Limited to the Issue of Exhaustion of Administrative (Doc. 113).

There are two grievances relevant to Ingram's claims: a grievance dated January 23, 2019, and a grievance dated April 10, 2019. The Court already explained that neither

grievance was properly exhausted in its order on July 30, 2020 (Doc. 91). On August 10, 2020, Ingram filed a "Motion to Revise and/or Alter or Amend a Judgment – Re (Doc. 91) Order" and cited Rules 54(b) and 59(e) of the Federal Rules of Civil Procedure (Doc. 93). The Court denied Ingram's Motion to Revise or Amend Judgment—again holding that neither grievance was properly exhausted (Doc. 115).

LEGAL STANDARD

*Summary Judgment*

Summary judgment is proper only where the moving party can demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*,

486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

DISCUSSION

## I.    IDOC Defendants' Motion Not Referencing the Amended Complaint

Ingram argues that the Amended Complaint supersedes the original complaint, thus the IDOC Defendants waived any argument because they failed to address the Amended Complaint (Doc. 113, pp. 3-4). The Court disagrees.

Ingram's Amended Complaint did not resolve or bring new arguments related to the issue of exhaustion of administrative remedies. The IDOC Defendants discuss the January 23, 2019 grievance, and argue that "Plaintiff [Ingram] failed to exhaust his administrative remedies before filing this lawsuit" (Doc. 104, p. 5). Accordingly, Ingram's argument is denied.

## II.    IDOC Defendant's Failing to Address the April 10, 2019 Grievance

Next, Ingram argues that the IDOC Defendants waived any objection by not addressing the April 10, 2019 grievance (Doc. 113, p. 7). But before the IDOC Defendants filed their motion, the Court found that Ingram's testimony as to the missing April 10, 2019 grievance to not be credible (Doc. 91, pp. 9-12). Therefore, the IDOC Defendants did not need to address the April 10, 2019 grievance, and Ingram's argument is denied.

## III.    Entitlement to Another *Pavey* Hearing

Ingram also protests that if "Defendants are excused for their waiver, Plaintiff will be entitled to a *Pavey* hearing whereas the original *Pavey* hearing was directed to Wexford Defendants . . . (Doc. 113, p. 7). This Court disagrees.

The Seventh Circuit has ruled that a second *Pavey* hearing is necessary in limited situations. *Daher v. Sevier*, 724 F. App'x 461, 465 (7th Cir. 2018). In *Daher*, a magistrate judge arranged a hearing procedure in two "steps." *Id*. at 462. "In the first step, the prison officials could try to meet their burden of producing evidence that [plaintiff] failed to exhaust the prison grievance system." *Id*. "At the second step, [plaintiff] could try to rebut that evidence." *Id*. The parties agreed to the magistrate judge's procedure. *Id*. at 463. The magistrate judge explained that the plaintiff did not "need" discovery before "step one," "but that he could request it later if he needed to rebut the defendants' evidence." *Id*. The magistrate judge explained that "he would go forward with the defendants' evidence and 'then determine what discovery' [plaintiff] might need if the defendants carried their burden." *Id*.

Step one proceeded, but step two never occurred. "When step one ended, the judge asked [plaintiff] how he 'wish[ed] to proceed.'" *Id*. The plaintiff explained that he wanted to "put a little evidence on" or testify. *Id*. Rather than addressing the discovery the plaintiff might need, the magistrate judge only gave the plaintiff ten minutes to testify. *Id*. Ultimately, the magistrate judge recommended dismissing the case for lack of exhaustion. The plaintiff filed objections to the recommendation arguing that he was not provided the opportunity to call witnesses or obtain evidence. *Id*. at 464. He continued, noting that an opportunity to present evidence would have allowed him to show the "electronic grievance system was unreliable or explain the 'mixups as to which rejection/response went with which grievance.'" *Id*. The district judge accepted the recommendation and dismissed the suit. *Id*.

On these facts, the Seventh Circuit held that another *Pavey* hearing was necessary. *Id*. at 465. The Court reasoned that the magistrate judge did not follow the agreed procedure, and "gave no reason for revising the discovery plan that he had established and the parties had agreed to, despite the 'good cause' requirement of Federal Rule of Civil Procedure 16(b)(4)." *Id*. at 464-65. The Court continued noting that "[b]esides upsetting the parties' expectations, the judge avoided Federal Rule of Civil Procedure 26(b)(1) and Federal Rule of Evidence 611(a) by allowing [plaintiff] no discovery and only ten minutes of testimony." *Id*. at 465. The Court explained that this "was an abuse of discretion under both Federal Rule of Civil Procedure 26(b)(1) and the 'truth-determining' function of Federal Rule of Evidence 611(a)[,]" because plaintiff's discovery requests were tailored to counter the defendants' assertions. *Id*. By the "magistrate judge refus[ing] even to consider these requests and [giving] [plaintiff] virtually no time to testify[,]" the magistrate judge "decided the exhaustion issue after allowing only one side to present evidence on it." *Id*.

A second *Pavey* hearing is unnecessary in Ingram's situation. Unlike the magistrate judge in *Daher*, who refused to consider the plaintiff's discovery requests, the Court considered Ingram's discovery requests and ordered three of the five witnesses Ingram had requested to appear at the *Pavey* hearing. (Docs. 73, 74, 81, 82). Indeed, the Court did not refuse to consider Ingram's request, but denied Ingram's request to call Sherry Benton after finding that Benton's testimony was unnecessary for the factual issues in this case (Doc. 74, p. 3). The Court also did not simply refuse to consider Ingram's request to call Ronald Barrow as a witness at the first *Pavey* hearing, but rather denied Ingram's request

because "[Ingram] fail[ed] to show how Barrow's testimony will be relevant to the issue of whether Plaintiff filed his April emergency grievance, other than to say in conclusory fashion that he has knowledge of the grievance" (Doc. 83). More importantly, unlike the magistrate judge in *Daher*—who gave the plaintiff virtually no time to testify—Ingram had the opportunity to call three witnesses (Docs. 73, 74, 81, 85). Ingram was also given sufficient time to respond to counsel's arguments at the *Pavey* hearing, and the Court confirmed when Ingram was done testifying that he had nothing else to say (Doc. 85). Ingram's *Pavey* hearing, unlike the *Pavey* hearing in *Daher*, was not one where the Court decided the exhaustion issue after only hearing one side's evidence. Accordingly, Ingram is not entitled to a second *Pavey* hearing

## IV.   IDOC Defendants Failing to Raise Exhaustion as Affirmative Defense

Finally, Ingram argues that the IDOC Defendants' Motion for Summary Judgment should be denied because they did not properly raise exhaustion as an affirmative defense in their answer (Doc. 98). The Court disagrees.

The Seventh Circuit has held "that a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). In *Curtis*, the Court found that exhaustion could be raised for the first time at summary judgment because "[plaintiff] was aware of the exhaustion issue even when he filed his complaint, and he confronted the defense in responding to the motion for summary judgment." *Id.* In *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 730 (7th Cir. 2007), the Court also found that exhaustion could be raised for the first time at summary judgment because the plaintiffs were not

prejudiced when the plaintiffs "fully understood the exhaustion requirement, as they explicitly stated in their complaint that they had exhausted their administrative remedies," and "they had ample time [to voluntarily dismiss their case] during the four months that followed before the district court granted the [defendant's] motion [for summary judgment]." *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 730 (7th Cir. 2007); *see also Martinez-Lopez v. Wurth*, 2020 WL 1530742, at *4 (N.D. Ill. Mar. 31, 2020) (holding the plaintiff was not prejudiced although the defendants did not raise exhaustion as an affirmative defense, but raised exhaustion in their opening brief on summary judgment because "[p]laintiff had a full opportunity to address the issue and, if he needed further discovery on the issue, he could have invoked FED. R CIV. P. 56(d)").

Like the plaintiffs in *Curtis*, 436 F.3d 709, and *Hess*, 502 F.3d 725, Ingram was aware of the exhaustion requirement in January 2020—when Wexford Defendants moved for summary judgment based on Ingram's lack of exhaustion (Docs. 44, 47, 50). Ingram even filed an amended complaint where he alleged defendants created a "higher burden on the exhaustion of remedies" (Doc. 66, p. 17). Ingram also had ample time to voluntarily dismiss his case as to the IDOC Defendants after the Court's order on Wexford's Motion for Summary Judgment (Doc. 91), and after the IDOC Defendants Motion for Summary Judgment (Doc. 103).

If the IDOC Defendants asserted exhaustion as an affirmative defense in their answer to Ingram's Amended Complaint (Doc. 66), it would not have made a difference. Like the plaintiff in *Martinez-Lopez*, 2020 WL 1530742 at *4, Ingram had a full opportunity

to address the exhaustion issue and, if he needed further discovery on the issue, he could have invoked Federal Rule of Civil Procedure 56(d). Ingram did not invoke Rule 56(d). Of course, Ingram could have sought leave to amend his complaint—and he could have alleged that he submitted another grievance, but he never received a response. Ingram already tried this tactic after the Wexford Defendants filed their motion for summary judgment—and the Court found it "implausible that this one grievance would go missing when the prison had a history of receiving and responding to Ingram's grievances" (Doc. 91, p. 10). Besides the history of grievances and the counselor meeting on May 17, 2019, where there was no indication that Ingram inquired about the status of the April 10 grievance or any other grievances, Ingram attached the January 23, 2019 grievance to his original complaint, but made no mention of any additional grievances. Accordingly, Ingram is not prejudiced, and the IDOC Defendants can raise the exhaustion defense for the first time at summary judgment.

<h2 style="text-align:center">CONCLUSION</h2>

For the reasons stated above, the Motion for Summary Judgment (Doc. 103) is **GRANTED**, and Ingram's claims of deliberate indifference against Nicholas Bebout, Louis Shicker, John Baldwin, Frank Lawrence, and Jacqueline Lashbrook (Counts I, II, and V) are **DISMISSED with prejudice**.

Because Ingram's Section 1983 claims are dismissed, the Court will decline to exercise jurisdiction over Ingram's claim of the intentional infliction of emotional distress (Count IV). *RWJ Management Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). In *limited* circumstances it would be appropriate for the Court to continue

hearing Ingram's state law claims, but none of those circumstances are present in this case. *See id.* at 480. Previously, the Court declined to dismiss Ingram's claim of the intentional infliction of emotional distress because the Court was under the impression that the claim was likely barred by the state statute of limitations. When a district court declines to exercise supplemental jurisdiction, however, a plaintiff need not fear his state claim will be barred by the statute of limitations, because "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367; *see also Artis v. D.C.*, 138 S. Ct. 594, 598 (2018) (holding that "§ 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock").

Not only will Ingram's intentional infliction of emotional distress claim not be barred upon refiling of the state claim, but also the Court does not find that substantial judicial resources have been expended on this claim. Finally, the Court does not find that this claim falls under the third exception to the general rule of relinquishing jurisdiction over a supplemental claim because it is not clearly apparent how the state claim is to be decided. Contrary to the Wexford Defendants' argument in their Motion for Summary Judgment Directed to Plaintiff's Count 4 (IIED), a plaintiff's intentional infliction of emotional distress claim is not necessarily subject to dismissal for not attaching a § 2-622 affidavit. *See Rodriguez v. Wexford Health Sources, Inc.*, 2019 WL 4392994, at *3 (S.D. Ill. Sept. 13, 2019) (holding that the plaintiff's claim is not based on a deviation from a medical standard and § 2-622 does not apply because the claim was not premised "on

allegations that [d]efendants' course of treatment deviated from the appropriate standard of care[,] [but] [ ] [p]laintiff essentially alleges that [d]efendants' knowing disregard of [p]laintiff's serious dental condition denied him access to care and caused severe pain and emotional distress").

Accordingly, the Motion for Summary Judgment Directed to Plaintiff's Count 4 (IIED) filed by Wexford Defendants is **DENIED as moot** (Doc. 116). This action is **DISMISSED without prejudice,** and the Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  June 4, 2021**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**